## Case No. 12,286.

SAMSON v. BURTON et al.

[5 Ben. 343; 5 N. B. R. 459.] [1]

District Court, D. Vermont. Sept., 1871. [2]

BANKRUPTCY — ENJOINING PROCEEDINGS IN STATE COURT.

A new petition being filed by the assignee in bankruptcy, to enjoin B. from proceeding in the action of book account referred to in the previous decision, and it appearing that the reversal of the judgment in the action of assumpsit between B. and C. was collusive, and that under the agreement between them, that action of assumpsit had been put out of court: *Held*, that a perpetual injunction must issue against B. and C. enjoining them from proceeding farther in the action of book account between them in the state court.

[This was an action by Amos J. Samson, assignee in bankruptcy of Alanson M. Clark, against Oscar A. Burton and Alanson M. Clark.]

SHIPMAN, District Judge. This is a summary petition in equity brought by the assignee to prevent the consummation of the alleged fraudulent agreement entered into by the bankrupt, Alanson M. Clark, and Oscar A. Burton, his brother-in-law, who claims to have a very large debt against the bankrupt. The alleged corrupt agreement so far as it is in writing, was entered into on the 18th of February, 1870, the day before the petition to put Clark into bankruptcy was filed. (See [Case No. 12,285]).

[From eighteen hundred and sixty down to the latter part of eighteen hundred and seventy, Clark and Burton had been exceedingly hostile, and had been engaged in a bitter and protracted litigation in the state courts of Vermont.

[In eighteen hundred and sixty Clark brought an action of assumpsit against Burton in the Franklin county court, demanding seventy-five thousand dollars.

[To this demand Burton filed a heavy claim in offset, and under a statute of Vermont which allows a defendant to recover in such cases when he proves a balance in his favor, Burton, at the April term of that court, in eighteen hundred and sixty-eight, recovered a judgment of about forty-six thousand dollars. Clark had, during the whole litigation, strenuously insisted that Burton's alleged claims against him were utterly false and fraudulent. He filed exceptions to various rulings on the trial, carried the case to the supreme court, and sought to have the judgment reversed and a new trial ordered. The case was, for reasons not necessary to state

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[2] [Affirmed in Case No. 2,801.]

here, never argued in the supreme court. It was still pending therein at the January term, eighteen hundred and seventy, when Clark's counsel not being ready, filed affidavits and moved that it be continued to the next term of that court; whereupon Burton consented to a reversal of the judgment, and the same was reversed and a· new trial ordered.

[In August, eighteen hundred and sixty-seven, while the above suit was pending, Burton brought an action of book account (a form of remedy peculiar to Vermont and one other state) and attached Clark's property to the amount of one hundred thousand dollars more or less. The suit and attachment is now pending in the state court.

[In an opinion upon a former hearing [Id. 12,285] of this controversy, a history of this and other litigations between ·Clark and Burton is given, and need not be repeated here.

[The following is the alleged fraudulent agreement entered into between Clark and Burton in February, eighteen hundred and seventy:

["This agreement, made this eighteenth day of February, eighteen hundred and seventy, between Oscar A. Burton, of Burlington, in the county of Chittenden, and Alanson M. Clark of St. Albans, in the county of Franklin, witnesseth,

["1. The suit now pending in the Franklin county court in favor of said Clark against said Burton is to be non-suit without costs at the next term of said court.

["2. The suit in chancery now pending in Chittenden county in favor of said Burton against said Clark and Bradley Barlow is hereby discontinued without costs.

["3. The suit in chancery now pending in Franklin county in favor of said Clark against said Burton is hereby discontinued without costs.

["4. In the action of book account now pending in Franklin county court, in favor of said Burton against said Clark. wherein Timothy P. Redfield, Homer W. Heaton and Silas P. Carpenter are auditors, the said parties may file all claims included in their specifications in the suit in favor of said Clark above named and which is hereby agreed to be entered non-suit.

["And the said Clark may also file in said action his five promissory notes. each dated February first, eighteen hundred and sixty, and no objection shall be made by either party to the determination on any of said claims by said auditors.

["And it is further agreed that the statute of limitation shall not be a bar or defense to said claims, or any of them, on either side, but that the auditors in said case shall hear and determine said claims upon their merits, under the proofs to be submitted to them.

 "(Signed)   A. M. Clark.
       "O. A. Burton."][3]

---

[3] [From 5 N. B. R. 459.]

Upon the former hearing before this court, Burton was perpetually enjoined from using this agreement in any manner, for reasons then fully given. The object of that injunction was to prevent Clark ·and Burton from controlling the litigation in the state court, in their joint interest, or in the exclusive interest of the latter. and to the detriment of the other creditors of Clark. It was insisted by the assignee that Burton had no right, by law, to transfer the claim which he had set up against Clark, in his ·plea of offset in the action of assumpsit, brought by Clark against him, to the action of book account, and thus shelter it under his attachment in the latter suit, thereby gaining a preference over other creditors, as provided for in their agreement.

But while this court, as the case then stood before it, arrested, or intended to arrest the use of this agreement, ·it left the question of law as it stood before any agreement was entered into, to the determination of the state tribunal. If, under the laws of Vermont, Burton had the right to transfer from his plea of offset, in the pending assumpsit suit, the items there set up, to his pending book action, the state court would so decide. and if the decision was not satisfactory to the assignee, the latter could carry the case to the supreme court of the United States; if Burton had no such right, it was presumed that the state court would so decide.

But during the whole of the proceedings before this court, it was assumed, upon the evidence, that the action of assumpsit was still pending in the state court. It now turns out that Burton had caused this agreement to be filed in the state court as early as the 2d of April, 1870, and, in pursuance thereof, the clerk of that court dropped the case, under a standing order of the court, from the docket. Afterwards, and after this court had issued its injunction against the use of the agreement in question, the assignee went into the state court and moved to have the case reinstated on the docket, which Burton successfully resisted. The result is that that action of assumpsit is out of court, and the question whether. under the law of Vermont, Burton has the right to transfer his claim from a pending assumpsit to the book action no longer remains. It has been swept out of existence by the operation of this unlawful agreement, which this court has already decided was entered into by Clark and Burton, with the knowledge of both, that the former was on the eve of bankruptcy. Thus Clark and Burton, by a fraudulent agreement between themselves, have disposed of this question. Whether Burton can now set up claims in a suit, in which he has attached nearly all the property of this bankrupt, which he has once attempted to enforce under a plea of set-off, when he had no attachment, and thus secure what was before an unsecured debt. depends not upon the law. and practice of Vermont courts, but upon the bankrupt law

as administered by this court. To leave Burton now to pursue his book action, and cover all his alleged claims against Clark by his attachment in that action, is to secure to him and Clark the enjoyment of the fruit of their fraudulent agreement.

Upon the former hearing before this court, there was no very cogent evidence, that the reversal of the judgment of $46,000 in Burton's favor, was the result of collusion between Clark and him. It is true that the circumstances were peculiar and suspicious, but the fact of collusion was not satisfactorily proved. The proof adduced by the assignee at this trial, on this point, is ample. That before the reversal of the judgment, Clark and Burton had an understanding between them, that this judgment should be reversed, and the suit discontinued, for the very purpose of allowing Burton to transfer his claim to the book action, and thus secure what was before an unsecured debt, or pretended debt, no unprejudiced mind, on reading the evidence now before this court, can have a doubt. Clark, in order to protect this arrangement, which was evidently part of a comprehensive scheme to cheat his creditors, in November, 1868, retained, evidently with Burton's knowledge, two of Burton's counsel in all his (Clark's) matters, "except the Burton cases." I make no imputation upon the counsel thus retained, but the fact of their being retained by Clark, and still remaining counsel for Burton, in the view of the former attitude of Clark and Burton, and in the light of the facts developed in this case, was, to say the least, a very extraordinary course on the part of Clark and Burton, and inconsistent with any other inference than that these two men, who for ten years had denounced each other as villains, and who had each resisted the claims of the other as false and fraudulent, had, in view of Clark's impending bankruptcy, come to an agreement which, they both knew, would in due time be assailed by Clark's other creditors. I cannot here detail all the evidence in support of this conclusion. One item of it, however, should be mentioned. A document in Clark's hand writing, and which was written as early as the last part of January, 1870, has been produced on this hearing, addressed to Burton. It conclusively shows that Clark desired and expected to enlist Burton in a scheme to deceive and defraud at least one of his other creditors. This paper was evidently not the first step toward an arrangement for their joint benefit. This document was delivered by Clark to one of Burton's counsel, who declined to state what he did with it, on the ground that to do so would violate professional confidence between him and Burton. It is true Burton swears that he never knew anything about this document, and had no connection with it directly or indirectly. It is equally true that he insists that his counsel shall be protected from disclosing what he did with it. A court of eq-

uity would be poorly employed in shutting its eyes to such a state of facts, and leaving these parties to dispose of a large part of this bankrupt estate in their own interest. I have not forgotten that Clark, after having admitted this document to be in his handwriting, subsequently on discovering its purport, swore that it was not his. The fact, however, has been conclusively proved, both by competent witnesses, and by specimens of his handwriting, admitted by himself to be genuine.

In view of all the facts proved on this trial, there can be no doubt, but that Clark and Burton are collusively engaged in a scheme by which the book action in the state court is to be used for the purpose of absorbing a large share of the bankrupt's estate, which would otherwise have gone to the general creditors. For this purpose the judgment in the state court was reversed by consent in January, 1870. For this purpose the agreement of the 18th of February, 1870, was made. For this purpose that agreement was filed with the clerk of the state court, and thus the action of assumpsit was nonsuited. To prevent the defeat of this purpose, Burton successfully resisted the efforts of the assignee to have that nonsuit taken off, and the case reinstated. To effectually accomplish this purpose, Burton claims the right to recover a judgment in the book action in the state court, to the amount of not far from one hundred thousand dollars, secured under cover of his old attachment of all, or nearly all Clark's property. If this court has any authority to prevent the success of this scheme, it is bound to exercise it. If it has no such authority, the assignee might as well surrender Clark's large estate to him and Burton, and let them divide it between themselves at once.

In the opinion delivered in a former stage of this controversy, and to which reference has already been made. I declined to enjoin Burton from proceeding in the state court, although his claim which he was there prosecuting, constituted a provable debt against the bankrupt. But in doing so, I assumed upon the proof then before me, that the action of assumpsit of Clark against Burton, was still pending, and that the reversal of the judgment in that suit was not procured by collusion. I enjoined the use of the agreement of the 18th of February, 1870, thus leaving as I supposed the litigation in the state court, to be prosecuted and defended by Burton, and the assignee, upon the grounds of law and fact as the cases would have stood, had the judgment in assumpsit been reversed bona fide. Upon the facts now in proof, I find that that judgment was reversed by collusion between Burton and Clark, and that notwithstanding the injunction against the use of the agreement of February 18, 1870, the latter had in fact been so used, as to give Burton the principal advantage which it was the object of that agreement to con-

SAMUEL (Case No. 12,288)  [21 Fed. Cas. page 306]

fer. To allow him now to proceed with his book action in the state court, is to stand by, and see him reap the fruit of a fraudulent agreement with the bankrupt, under cover of that action. It is possible that the assignee could successfully resort to the equity side of the state court, and thus prevent the consummation of this fraud, but as this is a question peculiarly within the jurisdiction of this court of bankruptcy, I see no propriety in remitting the assignee to another tribunal. A perpetual injunction will therefore be granted against Burton and Clark, enjoining them to proceed no further in the book account action, commenced by Burton against the bankrupt, in August, 1867, and now pending in the state court.

[NOTE. On appeal to the circuit court the decree of this court was affirmed. Case No. 2,801. For subsequent proceedings in this litigation, see Id. 2,802.]